JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REVITAL GALLEN,<br><br>             Plaintiff,<br><br>    v.<br><br>LIBERTY LIFE ASSURANCE COMPANY OF BOSTON and LINCOLN NATIONAL LIFE INSURANCE COMPANY,<br><br>             Defendants. | Case No. 8:22-cv-02031-WLH-JDE<br><br>**STATEMENT OF DECISION RE BENCH TRIAL**<br><br>Date:        November 4, 2024<br>Time:       9:00 a.m.<br>Courtroom: 9B |

## I.    STATEMENT OF FACTS

The following facts are undisputed. Revital Gallen ("Plaintiff") formerly worked as an attorney for Ernst & Young US LLP. (Declaration of Corrine Chandler in Supp. of Plaintiff's Opening Trial Brief ("Chandler Decl."), Docket No. 35-1 ¶ 3). At the time of Plaintiff's employment, Ernst & Young offered long-term disability ("LTD") insurance through a group policy (the "Policy") issued by Defendant Lincoln Financial Group ("Lincoln" or "Defendant"). (*Id.*). The Policy was initially issued by nominal defendant, Liberty Life Assurance Company of Boston, which was later acquired by Lincoln. (*Id.* ¶ 2).

The Policy contains a Subrogation and Reimbursement provision (the "Provision"), requiring that insureds reimburse Lincoln for benefits they receive "to the extent they are losses for which compensation is paid to the Covered Person by or on behalf of the person at fault[.]" (Declaration of Jenny Wang in Supp. of Defendant's Opening Trial Brief ("Wang Decl."), Exhibit 1, Docket No. 36-2 at page 50). In the alternative, it allows Lincoln to secure a lien on such compensation. (*Id.*). The Provision further states that when "[Lincoln] has paid benefits to or on behalf of the injured Covered Person, Lincoln will be subrogated to all rights of recovery that the Covered Person has against the person at fault." (*Id.*).

Plaintiff and her husband were involved in a serious automobile accident, leaving Plaintiff unable to work due to a "traumatic brain injury." (Appeal Submission to Lincoln Life Assurance Company of Boston ("Appeal Submission"), Chandler Decl., Exhibit 3 at page 4). Plaintiff's accident occurred on July 16, 2020, and ultimately required her to stop working about two months later. (*Id.* at 2-3). Plaintiff applied for LTD benefits pursuant to the Policy, and her claim was approved by Defendant Lincoln on January 28, 2021. (*Id.* at 3). On September 9, 2021, Defendant terminated Plaintiff's benefits, alleging she no longer met the Policy's definition of a disability. (Chandler Decl. ¶ 2). Plaintiff appealed the decision, which was ultimately successful, and continues to receive LTD benefits. (*Id.* ¶¶ 5-6).

On May 16, 2022, Plaintiff's counsel sought to arrange a discussion with Muriel Lambert ("Lambert"), Senior Claims Examiner for Subrogation at Lincoln, regarding Plaintiff's personal injury litigation. (Chandler Decl. ¶ 9; Exhibit 6). Plaintiff had received an email roughly nine months earlier indicating that, pursuant to the Provision, Defendant Lincoln intended to assert on a lien on "any settlement proceeds recovered from a responsible party as a result of [Plaintiff's] injury of July 16, 2020." (Chandler Decl. ¶ 8; Exhibit 5). To that end, Plaintiff's counsel sought to clarify the allocation of the settlement funds under the terms and conditions of the Policy. (Chandler Decl. ¶ 9).

1    During the exchange, Plaintiff's counsel also indicated to Lambert that Plaintiff
2    would file a claim to her own insurer, Progressive, for underinsured motorist ("UIM")
3    benefits, as her losses exceeded the settlement with the culpable party. (Chandler
4    Decl. ¶ 11). Plaintiff's counsel communicated that Plaintiff did not believe that such
5    benefits were subject to reimbursement, nor was Defendant entitled to a lien on this
6    recovery pursuant to the Provision. (*Id.*). On July 15, 2022, Lambert communicated
7    that Defendant asserts its entitlement to a lien on the UIM benefits. (Chandler Decl.,
8    Exhibit 8). Plaintiff's counsel responded that this response constituted an adverse
9    benefit determination and requested the controlling policy language and interpretation
10   in writing. (Chandler Decl. ¶ 14). Defendant declined, stating that there was no
11   adverse benefit determination and that it has a "fully valid lien." (*Id.* ¶ 16; Chandler
12   Decl., Exhibit 8).
13   Considering her appeals exhausted, Plaintiff brought the present action, seeking
14   (1) payment of benefits, unreduced by any amounts [Plaintiff] has received or will
15   receive as a result of her UIM claims, and (2) an order declaring that any sums she
16   receives as a consequence of her UIM claims are not subject to a lien or recovery by
17   Defendant. (Plaintiff's Opening Trial Brief, Docket No. 35 at 7). In sum, parties
18   agree that Plaintiff is disabled and unable to work but are not in agreement about the
19   amount of benefits to which she is entitled. (*Id.* at 1). Accordingly, the question
20   before the Court is whether UIM benefits are paid "on behalf of" the tortfeasor, such
21   that they are subject to the Policy's Provision requiring reimbursement.
22   **II.   DISCUSSION**
23       **A.   Legal Standard**
24   The Employee Retirement Income Security Act of 1974 ("ERISA") establishes
25   nationwide minimum standards, as well as "'a panoply of remedial devices' for
26   participants and beneficiaries," with respect to employers' voluntarily established
27   retirement and health plans. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101,
28   108 (1989) (quoting *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146

1  (1985)); 29 U.S.C. § 1001. "ERISA is a comprehensive statute designed to promote
2  the interests of employees and their beneficiaries in employee benefit plans."
3  *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990). To that end, ERISA
4  imposes fiduciary duties on administrators of such benefit plans. 29 U.S.C.
5  § 1104(a)(1). "When an insurance company administers claims for an employee
6  welfare benefit plan and has authority to grant or deny the claims, the company is an
7  ERISA 'fiduciary' under 29 U.S.C. §1002(21)(A)(iii)." *Aetna Life Ins. Co. v. Bayona*,
8  223 F.3d 1030, 1033 (9th Cir. 2000) (quoting *Libbey-Owens-Ford Co. v. Blue Cross
9  & Blue Shield Mut.*, 982 F.2d 1031, 1035 (6th Cir. 1993)).
10      To further protect plan participants, ERISA requires that plans be reduced to
11 writing, such that "every employee may, on examining the plan documents, determine
12 exactly what his rights and obligations are under the plan." *Curtiss-Wright Corp. v.
13 Schoonejongen*, 514 U.S. 73, 83 (1995); 29 U.S.C. § 1102(a)(1) ("Every employee
14 benefit plan shall be established and maintained pursuant to a written instrument").
15 Accordingly, courts interpret benefit plans from the perspective of a plan participant,
16 focusing on the reasonable expectations created by the plan language. *See, e.g.*,
17 *Allstate Ins. Co. v. Ellison*, 757 F.2d 1042, 1044 (9th Cir. 1985) (emphasizing that
18 "terms should be interpreted in an ordinary and popular sense as would a man of
19 average intelligence and experience"); *Saltarelli v. Bob Baker Grp. Med. Trust*, 35
20 F.3d 382, 387 (9th Cir. 1994) ("We hereby adopt the doctrine of reasonable
21 expectations as a principle of the uniform federal common law informing
22 interpretation of ERISA-governed insurance contracts").
23      District courts review ERISA benefits determinations *de novo*. *Firestone Tire
24 & Rubber Co.*, 489 U.S. at 109. ERISA plan or claim administrators are only entitled
25 to deferential review if they can demonstrate that the plan grants discretionary
26 authority to make benefit determinations. *Id.* at 114-15. Absent such a
27 demonstration, courts do not defer to plan or claim administrators' interpretation of
28 the applicable policy or its factual determinations. *Opeta v. Nw. Airlines Pension*

*Plan for Cont. Emps.*, 484 F.3d 1211, 1219 (9th Cir. 2007). As Defendant did not demonstrate such discretionary authority, the Court reviews Defendant's determinations *de novo*.

The Ninth Circuit has repeatedly emphasized that when ERISA plan language is ambiguous, it is to be construed in favor of the plan participant. *See Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 541 (9th Cir. 1990); *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 950 (9th Cir. 1993) ("Ambiguities in the Plan are to be resolved in [plaintiff's] favor"); *Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 943 (9th Cir. 1995) (highlighting the rule that "ambiguities are to be resolved in favor of the insured . . .").

**B.    Analysis**

For the reasons explained below, the Court **GRANTS** judgment in Plaintiff's favor.

***1. Common Sense Interpretation of the Plan Language Supports Plaintiff's Interpretation***

The Court begins its inquiry "with the plain language of the Plan, interpreting it 'in an ordinary and popular sense as would a person of average intelligence and experience.'" *Tapley v. Locals 302 and 612 of Intern. Union of Operating Eng'rs-Emp'rs Constr. Industry Retirement Plan*, 728 F.3d 1134, 1140 (9th Cir. 2013) (quoting *Gillam v. Nev. Power Co.*, 488 F.3d 1189, 1194 (9th Cir. 2007)). The determinative question is whether UIM benefits are made "on behalf of" the third party responsible for the accident, such that they would be subject to the Policy's Subrogation and Reimbursement Provision.

According to the California Department of Insurance, UIM policies[1] provide coverage for "limited costs for bodily injury if you are in an accident with a driver who does not have enough insurance to pay for damages." CAL. DEP'T OF INS.,

---
[1] The Court refers specifically to Underinsured Motorist, rather than Uninsured Motorist, policies.

5

AUTOMOBILE INSURANCE INFORMATION GUIDE 4 (2023), https://www.insurance.ca.gov/01-consumers/105-type/95-guides/01-auto/upload/IG-Auto-Insurance-Updated-092123.pdf (accessed Nov. 7, 2024). California law requires that insurance companies offer such policies and obtain a waiver from insureds who choose not to purchase it. *Id.*; *see* Cal. Ins. Code § 11580.2. The purpose is to "require a 'type of self-protection' on the part of insured owners or operators." *Mercury Ins. Grp. v. Superior Court*, 19 Cal.4th 332, 341 (1998) (highlighting the legislative history of section 11580.2). As such, UIM benefits are part of the contractual agreement between the insurer and the insured, for which the insured pays associated premiums.

According to Merriam-Webster, "on behalf of," in its ordinary, popular meaning is "in the interest of" or "as a representative of." *On Behalf Of*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/on%20behalf%20of (accessed Nov. 7, 2024). Defendant insists that Black's Law Dictionary is the more apt source for definition. (Defendant's Opening Trial Brief, Docket No. 36 at 7). Black's Law Dictionary defines "on behalf of" as "acting in the place of someone else." *On Behalf Of*, BLACK'S LAW DICTIONARY, https://thelawdictionary.org/on-behalf-of/ (accessed Nov. 7, 2024). By either definition, the Court cannot conclude that UIM benefits are made "on behalf of" the culpable party.

Insurance companies providing UIM coverage to their insureds are not acting "in the interest of" or "as a representative of" the tortfeasor, nor are insurance companies acting "in the place of" the tortfeasor. Insurance companies, in these contexts, are merely acting pursuant to a contract with the insured. Indeed, UIM insurers have no defined relationship to the underinsured motorist, beyond the fact that the benefits are triggered once the motorist's policy limit is exhausted. *See Hartford Fire Ins. Co. v. Macri,* 4 Cal.4th 318, 328 (1992) (highlighting that the "California underinsurance scheme focuses on the *amount* of the tortfeasor's automobile liability policy," rather than the amount of the injured driver's damage)

(emphasis in original). This does not imply that the payments are being made "in the place of" the tortfeasor.

Defendant argues that the court in *Simnitt* addressed this issue, concluding that UIM benefits are no different than payments recovered directly from the third-party tortfeasor. *Providence Health Plans of Or. v. Simnitt*, 2009 WL 700873, at *6 (D. Or., Mar. 13, 2009). In *Simnitt*, the defendant was a participant of the plaintiff's employee benefit plan (the "Plan"). *Id.* at *1. The Plan contained a subrogation and reimbursement provision, stating that "[t]he Plan may recover money from a third party, usually an insurance carrier, who may be responsible for paying for your treatment for an illness or injury." *Id.* at *2. The defendant was involved in an automobile accident, for which a third party was responsible. *Id.* The plaintiff had paid for the defendant's medical care in the amount of $143,194.69. *Id.* at *1. The defendant ultimately recovered $25,000 from the tortfeasor and $225,000 from her own car insurance's UIM policy. *Id.* at *2. The plaintiff then sought to be reimbursed for expenses paid on the defendant's behalf. *Id.* at *3. The court ultimately concluded that both the funds recovered directly from the tortfeasor and the funds received from UIM benefits were subject to reimbursement. *Id.* at *6. The court reasoned that had the defendant recovered the entire $250,000 from the tortfeasor, the entirety such funds would be eligible for reimbursement or subrogation, and to "hold otherwise would provide a windfall to plan members who are injured by uninsured or underinsured tortfeasors." *Id.*

The Court, however, finds *Simnitt* to be factually distinguishable and, accordingly, declines to follow the reasoning applied by our sister court. For one, the language of the policy in *Simnitt* more obviously includes UIM benefits; by framing the payments subject to reimbursement as any funds "from a third party, usually an insurance carrier," an average participant would not be surprised to learn that this includes UIM benefits. The language is far broader and more clearly addresses a situation in which an injured party receives benefits pursuant to a plan for which they

7

paid themselves. After all, UIM insurers are "responsible for paying for [one's] treatment or injury," so there is no reason to conclude UIM benefits would *not* be subject to reimbursement. By contrast, in the present case, the source of the funds was specifically limited to those paid "by or on behalf of" the culpable party. That phrasing does not alert a participant to the fact that even benefits they receive, pursuant to plans for which they have paid the premiums themselves, would also be subject to reimbursement, merely because they relate to another party's culpable conduct. Instead, the plain language implies that only funds received directly from the tortfeasor *or* from the tortfeasor's insurance would be subject to reimbursement. The same cannot be said of the language in *Simnitt*. The Court finds these factual distinctions significant.

Accordingly, the Court declines to follow our sister court's reasoning in *Simnitt*. The court in *Simnitt* concluded that finding a distinction between payments from UIM benefits and those from the tortfeasor directly would result in a windfall to the plaintiff. The Court, however, finds that a hypothetical windfall is not a sufficiently compelling reason to conclude, contrary to the plain language of the Policy in this case, that there is no practical difference between UIM benefits and funds paid by the tortfeasor or his insurance carrier for the purposes of the Provision. This is particularly where Defendant has made no showing that Plaintiff will gain a windfall should the UIM benefits not be subject to reimbursement. The Court does not believe Plaintiff could realistically recover a windfall in this context, given that LTD benefits and UIM benefits functionally address different needs. While LTD benefits are meant to replace lost income over an extended period, UIM benefits are meant to provide coverage for "limited costs for bodily injury" resulting from "an accident with a driver who does not have enough insurance to pay for damages." CAL. DEP'T OF INS., AUTOMOBILE INSURANCE INFORMATION GUIDE 4 (2023), https://www.insurance.ca.gov/01-consumers/105-type/95-guides/01-auto/upload/IG-Auto-Insurance-Updated-092123.pdf (accessed Nov. 7, 2024). As such, the Court

declines to apply the reasoning in *Simnitt*.

In sum, the Court concludes that UIM benefits are not paid "on behalf of" the tortfeasor. *Accord Kennedy v. Georgia-Pac. Corp.*, 31 F.3d 606 (8th Cir. 1994) (holding that UIM benefits are not paid "on behalf of the responsible person," for purposes of ERISA plan reimbursement provision). Accordingly, the plain language of the Provision dictates that UIM benefits Plaintiff received or will receive are not subject to the Provision requiring reimbursement.

### 2. At Best, Policy Language Is Ambiguous, Requiring the Court to Construe It in Plaintiff's Favor

The Court recognizes that, at best for Lincoln, the phrase "on behalf of" is ambiguous. This is evidenced by the competing interpretations provided by Plaintiff and Defendant. Ambiguities are to be resolved in favor of the beneficiary of the plan, rather than the drafter, however. *Kunin*, 910 F.2d at 541; *Patterson*, 11 F.3d at 950. As such, the Provision must be construed in Plaintiff's favor. Construing the Provision in Plaintiff's favor requires that, where the phrase "on behalf of" does not clearly encompass UIM benefits, the language be interpreted to not include them.

The language in ERISA plans is meant to clearly display to participants what is and is not covered. *See Crutiss-Wright Corp.*, 514 U.S. at 83 (highlighting that the purpose of requiring that ERISA plans be in writing is so that "every employee may, on examining the plan documents, determine exactly what his rights and obligations are under the plan"). To that end, it is incumbent on drafters of plan language to ensure that provisions are crafted in a way that alerts participants as to the scope of coverage. *See Boston Mut. Ins. v. Murphree* ("*Murphree*"), 242 F.3d 899, 903 (9th Cir. 2001).

While the factual situation in *Murphree* is somewhat different, that court's conclusion highlights the import of clearly drafting ERISA plans. In *Murphree*, the defendants' minor child was injured in an automobile collision, and most of her medical expenses were covered by her defendant father's employee health plan (the

"Plan"), insured by plaintiff Boston Mutual. *Murphree*, 242 F.3d at 901. The remainder of the expenses were paid by the defendants' auto insurer, which provided for $500,000 in UIM insurance to cover losses exceeding the culpable driver's insurance limits. *Id.* Plaintiff Boston Mutual claimed an interest in these UIM funds due to a coordination provision ("Provision") in the Plan. *Id.* The Provision required coordination of medical benefits with "one or more plans," defining "plans" as "[a]ny automobile policy individual or group; this includes . . . (e) any mandatory automobile reparations insurance (no-fault) benefits providing benefits under a medical expense reimbursement provision . . ." *Id.* at 903. While Boston Mutual contended that this implied coordination with *every* auto policy, including policies providing UIM coverage, the court disagreed. *Id.* The court differentiated between first-party medical coverage and UIM insurance coverage, which requires a third party's liability to trigger benefits, concluding that "no reasonable insured would expect that the Plan's coordination clause, which at most implicates other first-party medical coverage, could possibly apply to UIM coverage." *Id.* The court concluded its analysis by stating that Boston Mutual "bore the responsibility of crafting a clear coordination provision specifically referencing UIM insurance." *Id.* at 904.

To be sure, the Court recognizes that the policy language in *Murphree* differs from the fault-based language in the Policy at issue. Further, the Court does not imply that Defendant was required to include an exhaustive list of every type of benefit subject to reimbursement. If Defendant wished the Provision to cover UIM benefits, however, the language should have been explicit. Including the language "with respect to," "in connection with," or "in relation to the culpable person" would more effectively alert plan participants that UIM benefits would be subject to the Provision. Absent clearer language, the Court is unable to conclude that the Provision is written to encompass UIM benefits.

///

///

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** judgment in Plaintiff's favor. Judgment is entered on behalf of Plaintiff as follows:

1. While Defendant continues to pay LTD benefits to Plaintiff, they shall not be reduced by any amounts she has received or will receive as a result of her UIM claims;
2. Any sums Plaintiff received or will receive pursuant to her UIM claims are not subject to any lien or recovery by Defendant.

**IT IS SO ORDERED.**

Dated: November 12, 2024

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE